1  John R. Till  State Bar No. 178763
   Bret A. Stone  State Bar No. 190161
2  Brian R. Paget  State Bar No. 168694
   Paladin Law Group® LLP
3  1176 Boulevard Way, Suite 200
   Walnut Creek, California 94595
4  Telephone: (925) 947-5700
   Facsimile: (925) 935-8488
5
6  Counsel for Plaintiffs
   RICHARD G. WHITEHURST AND
   LORRAINE D. WHITEHURST
7
8
                    **IN THE UNITED STATES DISTRICT COURT**
9
               **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
10
11  RICHARD G. WHITEHURST AND          Case No. C09-04808 MEJ
    LORRAINE D. WHITEHURST, as
12  individuals and as trustees of the Whitehurst   FIRST AMENDED COMPLAINT FOR:
    Family Trust,
13                                      1.   RCRA § 7002(a)(1)(B);
                        Plaintiffs,     2.   CERCLA § 107(a);
14                                      3.   Public Nuisance;
                                        4.   Public Nuisance *Per Se*;
15              *v.*                    5.   Private Nuisance;
                                        6.   Trespass;
16  BANK OF AMERICA, NATIONAL           7.   Negligence;
    ASSOCIATION, a national banking     8.   Negligence *Per Se*;
17  corporation; CHARLOTTE A. HEINL, as an   9.   Ultrahazardous Activity;
    individual and dba Norge Cleaners; and   10.  Fraudulent Nondisclosure/Concealment;
18  DOES 1 through 100,                 11.  Contribution;
                                        12.  Contribution under California's Hazardous
19                      Defendants.          Substance Account Act § 25363(e);
                                        13.  Contribution under CERCLA § 113(f);
20                                      14.  Equitable Indemnity;
                                        15.  Waste; and
21                                      16.  Declaratory Relief
22                                      Jury Trial Demanded
23
24      Plaintiffs RICHARD G. WHITEHURST and LORRAINE D. WHITEHURST (collectively, the

25  "Whitehursts" or "Plaintiffs") bring this action against Defendants BANK OF AMERICA, NATIONAL

26  ASSOCIATION ("Bank of America, NA"), CHARLOTTE A. HEINL ("Heinl"), and DOES 1 through

27  100 (collectively, "Defendants"), and allege upon knowledge as to their own acts, and upon information

28  and belief as to the acts of all others, as follows:



**NATURE OF THE ACTION**

1.   Plaintiffs bring this action to abate, and to recover the costs and damages they have incurred and will incur to address, the contamination of the soil and groundwater in and around their property located at 2114 MacArthur Blvd., Oakland, California 94602-2229 (the "Site").

2.   Plaintiffs purchased 2114 MacArthur Blvd. (the "Property") from Bank of America, National Trust & Savings Association ("NT&SA"), in 1986-1987.  Before then, Bank of America, NT&SA, had leased the Property to Charlotte A. Heinl ("Heinl"), who operated a Norge Cleaners dry cleaning business on the Property from approximately 1965 to 1986.

3.   Plaintiffs are informed and believe that Heinl caused and contributed to the contamination at the Site by releasing dry cleaning solvent and other hazardous substances into the environment at the Property during her operations of her dry cleaning business at the Property.

4.   Plaintiffs are informed and believe that Bank of America, NT&SA, caused or contributed to the presence of the hazardous substances in the environment at the Site because it owned and controlled the Property when, and from which, those substances were released or otherwise discarded, but failed to prevent or abate such contamination.

5.   The Regional Water Quality Control Board for the San Francisco Bay Region (the "RWQCB") may attempt to require Plaintiffs, as the current owners of the Property, to investigate and potentially to remediate the contamination at the Site.  On September 29, 2009, the RWQCB sent an information demand to Plaintiffs seeking site-history information pursuant to California Water Code § 13267.

6.   Plaintiffs deny that they are liable, and allege that Defendants are liable, for the RWQCB's oversight costs and for the costs of investigating and remediating the contamination at the Site.

7.   Plaintiffs file this third party action in defense of the claims made against them by the RWQCB in order to avoid any liability or, at least, to minimize their liability for the RWQCB's oversight costs and the costs of investigating and remediating the contamination at the Site.

**PARTIES**

***Plaintiffs***

8.   Plaintiffs Richard G. Whitehurst and Lorraine D. Whitehurst are individuals, a married couple, and the innocent current owners of the Property.  Richard and Lorraine Whitehurst reside in the County

1    of Contra Costa.

2                                    ***Defendants***

3        9.    Bank of America, NT&SA, owned the Property from at least 1965 until 1987, when it sold

4    the Property to Plaintiffs.  It was a subsidiary of BankAmerica Corp. during that time.  When

5    BankAmerica Corp. merged with NationsBank in 1998, they became Bank of America Corporation and,

6    as part of that merger, Bank of America, NT&SA, was renamed Bank of America, NA, which is a

7    national banking corporation and the successor-in-interest to Bank of America, NT&SA.

8        10.   Defendant Charlotte A. Heinl is an individual who, Plaintiffs are informed and believe, resides

9    in the County of Contra Costa.  Heinl owned and operated a Norge Cleaners dry cleaning business on

10   the Property from approximately 1965 until 1986.

11       11.   The true names and capacities, whether individual, corporate, associate or otherwise, of Does

12   1 through 100 are unknown to Plaintiffs at this time, and Plaintiffs' claims are asserted against them

13   using fictitious names pursuant to California Code of Civil Procedure § 474.  When their true names

14   and capacities are ascertained, Plaintiffs will amend their Complaint accordingly.

15                        **JURISDICTION, VENUE AND NOTICE**

16       12.   This Court has jurisdiction over the subject matter of Plaintiffs' First Cause of Action pursuant

17   to the Resource Conservation and Recovery Act ("RCRA") § 7002(a), 42 U.S.C. § 6972(a).  This Court

18   also has exclusive original jurisdiction over the subject matter of Plaintiffs' Second and Thirteenth

19   Causes of Action pursuant to the Comprehensive Environmental Response, Compensation & Liability

20   Act ("CERCLA") §§ 107(a) and 113(f), 42 U.S.C. §§ 9607(a), 9613(f).  In addition, this Court has

21   jurisdiction over the subject matter of Plaintiffs' Sixteenth Cause of Action pursuant to the federal

22   Declaratory Judgment Act, 28 U.S.C. § 2201, and 28 U.S.C. § 1331.

23       13.   This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the subject matter

24   of Plaintiffs' other causes of action because those claims are so related to the federal claims in this

25   action that they form the same case and controversy under Article III of the U.S. Constitution.

26       14.   Venue is proper in this Court pursuant to CERCLA § 113(b), 42 U.S.C. § 9613(b), because

27   the releases and damage at issue in this action occurred in this judicial district.  Venue is also proper

28   in this Court pursuant to RCRA § 7002(a), 42 U.S.C. § 6972(a), and 28 U.S.C. § 1391(b), because the

actual and threatened endangerment, injury and damage at issue are taking place and have taken place in this judicial district.

15. Plaintiffs provided notice of the actual and threatened endangerment, injury and damage alleged herein by mailing Notices of Endangerment to the Administrator of the United States Environmental Protection Agency ("USEPA"), the State of California, and both Defendants.

16. Plaintiffs waited at least ninety (90) days after receipt of the Notices of Endangerment by each of the recipients before filing this action.

17. Plaintiffs have satisfied all jurisdictional prerequisites to filing this action.

## GENERAL ALLEGATIONS

### *The Site*

18. The Site is the area impacted by or threatened to be impacted by the environmental contamination at issue in this action.

19. The Site is comprised of the area at, around and in the vicinity of the Property at 2114 MacArthur Blvd., Oakland, California 94602-2229.

### *Ownership and Operational History of the Property*

20. Bank of America, NT&SA, owned the Property from at least 1965 until 1987, when it completed the sale of the Property to Plaintiffs. Before it sold the Property to Plaintiffs, the Property was part of a larger parcel of real property owned by the Bank. The Bank subdivided that parcel shortly before it sold the Property to Plaintiffs. The remainder of the parcel, which is, on information and belief, still owned by Bank of America, NA, is impacted by or threatened to be impacted by the environmental contamination at issue in this action and thus is part of the Site.

21. During its ownership of the Property, the Bank leased the Property, including the premises thereon, to Charlotte A. Heinl from approximately 1965 until 1986, during which time she owned and operated a Norge Cleaners dry cleaning franchise business from and at the premises on the Property.

22. Plaintiffs are informed and believe that Charlotte Heinl's lease terminated and that she vacated the premises and ceased operating her dry cleaning business in late 1986, at least six (6) months before Bank of America, NT&SA, sold the Property to Plaintiffs.

23. Bank of America, NT&SA, sold the Property to Plaintiffs in 1986-1987 for $265,000.



***The Contamination***

24.   Plaintiffs are informed and believe that Charlotte Heinl used perchloroethylene ("PCE") as a dry cleaning solvent in the operations of her dry cleaning business on the Property from approximately 1965 to 1986.

25.   PCE is an industrial solvent that is used in dry cleaning processes.  Common synonyms for PCE include tetrachloroethylene, perc, perchlor, carbon bichloride, carbon dichloride, ethylene tetrachloride, perclene, perk, 1,1,2,2-tetrachloroethylene, and tetrachloroethene.

26.   The International Agency for Research on Cancer has classified PCE as a Group 2A carcinogen, which means that it is probably carcinogenic to humans.

27.   Because of its mobility in the groundwater, its toxicity to humans at low levels, and its density (which causes it to sink below the water table), PCE in the environment can be difficult and expensive to cleanup.

28.   Over time, under anaerobic conditions present in the groundwater, reductive dechlorination of PCE naturally occurs according to the following sequence: PCE degrades to trichloroethylene ("TCE"), which in turn degrades to dichloroethylene ("DCE"), which in turn degrades to vinyl chloride ("VC") (collectively, "Chemicals of Concern").

29.   The Chemicals of Concern are "hazardous substances" as that term is defined in federal law, 42 U.S.C. § 9601(14), and state law, Cal. Health & Safety Code § 25281(g).  The Chemicals of Concern are also "hazardous substances" within the meaning of California Health & Safety Code § 25316 because they are "hazardous wastes" having the characteristics identified in or listed pursuant to 42 U.S.C. § 6921.

30.   The Chemicals of Concern are also "hazardous wastes" and "solid wastes" within the meaning of RCRA §§ 1004(5) and (27), and 7002(a)(1)(B), 42 U.S.C.§§ 6903(5) and (27), 6972(a)(1)(B), because they are discarded materials resulting from industrial, commercial, or community activities that, because of their concentration or chemical characteristics, may pose a substantial present or potential hazard to human health or the environment when improperly disposed of or otherwise managed.

31.   The Chemicals of Concern are also "wastes" within the meaning of California Water Code §§ 13050(d) and 13304 because they are liquids, solids or gaseous substances associated with human

1 | habitation, or of human origin, or from a producing or processing operation that is being or has been
2 | discarded or intended to be discarded from a manufacturing or processing operation.

3 | 32. Preliminary soil and groundwater tests were conducted at the Site in September 2007. The
4 | results of this testing indicate that highly elevated levels of the Chemicals of Concern, especially PCE,
5 | are present in the environment at the Site, well beyond the allowable maximum contaminant levels
6 | ("MCLs") set by federal and state law.

7 | 33. The Chemicals of Concern have migrated and continue to migrate in the sub-surface at the
8 | Site, polluting and threatening to pollute additional soil and groundwater and to thereby increase the
9 | size of the Site and the threat that the contamination poses to human health.

10 | 34. The Chemicals of Concern that are present at the Site have commingled in the environment
11 | at the Site to create a single indivisible harm.

12 | 35. All groundwater within the State of California, including the groundwater at the Site and all
13 | groundwater that has been, and that may be, adversely impacted by the contamination at the Site, is
14 | "water of the state" pursuant to California Water Code § 13050(e).

15 | 36. The State of California has a policy against degradation of its waters, and the presence of the
16 | Chemicals of Concern in the environment at the Site violates that policy.

17 | 37. The Chemicals of Concern in the environment at the Site present an actual or potential
18 | imminent and substantial endangerment to the public health, welfare and the environment, is a public
19 | nuisance, and has resulted in actual or threatened injury to Plaintiffs' Property and to the property of
20 | the State of California, including its waters.

21 | 38. Plaintiffs are informed and believe that Charlotte Heinl caused or contributed to the presence
22 | of the Chemicals of Concern in the environment at the Site because she intentionally or negligently,
23 | suddenly, and accidentally released or otherwise discarded the Chemicals of Concern at the Property
24 | during her operations of her dry cleaning business on the Property from approximately 1965 to 1986.

25 | 39. Plaintiffs are informed and believe that Bank of America caused or contributed to the presence
26 | of the Chemicals of Concern in the environment at the Site because it owned and controlled the
27 | Property at which, and when, the Chemicals of Concern were released or otherwise discarded, but failed
28 | to prevent or abate such contamination.

40. As a result, Plaintiffs have incurred and will continue to incur response costs in order to investigate and remediate the contamination at the Site, and have incurred and will continue to incur carrying costs and other damages because of their inability to freely use, encumber, develop and/or sell their Property.

## FIRST CAUSE OF ACTION
**(Abatement of an Imminent and Substantial Endangerment – RCRA § 7002(a)(1)(B))**
**(Against All Defendants)**

41. Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 40, inclusive, as though set forth in full herein.

42. RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), under which Plaintiffs bring this action, is RCRA's citizen enforcement provision.

43. Any person may bring a lawsuit under RCRA § 7002(a)(1)(B) when: (a) a "solid or hazardous waste" (b) "may present an imminent and substantial endangerment to health or the environment" and (c) the defendant falls within one of the categories of persons that Congress declared liable for taking abatement action or "such other action as [this Court determines] may be necessary."

44. The persons declared liable by Congress for abatement of potential endangerments under RCRA § 7002(a)(1)(B) are persons that contributed to "past or present handling, storage, treatment, transportation, or disposal" of the "hazardous wastes" and "solid wastes" at issue. Pursuant to the express terms of RCRA § 7002(a)(1)(B), these persons specifically include "any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility."

45. Under RCRA § 1004(27), 42 U.S.C. § 6903(27), "solid waste" is "discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities."

46. Under RCRA § 1004(5), 42 U.S.C. § 6903(5), "hazardous waste" is "a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may . . . pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported or disposed of, or otherwise managed."

47. Under RCRA § 1004(3), 42 U.S.C. § 6903(3), "disposal" means "the discharge, deposit,



injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters."

48.  Pursuant to authority under RCRA § 3001, 42 U.S.C. § 6921, the Administrator of the US EPA promulgated regulations at 40 C.F.R., Part 261 listing or identifying certain hazardous wastes that the Administrator elects to subject to the strict regulatory program established in Subtitle III of RCRA, 42 U.S.C. §§ 6921-6931.  Pursuant to RCRA § 7006(a)(1), 42 U.S.C. § 6976(a)(1), any RCRA hazardous waste finally so "listed or identified" by the Administrator following formal, "notice and comment" rule-making as being subject to the hazardous waste regulatory program set forth in Subtitle III of RCRA, has been finally and conclusively determined for all purposes of any RCRA enforcement action, including the instant one, to be a "hazardous waste" as defined by RCRA § 1004(5).  However, for purposes of RCRA § 7002(a)(1)(B) citizen suits, substances also qualify as "hazardous wastes" and "solid wastes" when the above statutory definitions (*i.e.*, those set forth in RCRA §§ 1004(5) and (27)) are met. 40 C.F.R. § 261.1(b)(2).

49.  Each Defendant and each Plaintiff is a "person" within the meaning of RCRA § 1004(15), 42 U.S.C. § 6903(15).

50.  The Chemicals of Concern in the environment at the Site are "solid wastes" because they are discarded materials resulting from commercial operations.

51.  The Chemicals of Concern in the environment at the Site are "hazardous wastes" because of their concentrations, or physical or chemical characteristics, and because they pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, disposed of, or otherwise managed.

52.  Each of the Defendants caused or contributed to the past or present handling, storage, treatment, transportation, or disposal of "solid wastes," "hazardous wastes," "wastes," and "hazardous substances" in the environment at the Site, including the waters of the State of California, because each Defendant released or otherwise discarded the Chemicals of Concern, or owned and controlled the Property when, and from which, those Chemicals of Concern were released or otherwise discarded, but failed to prevent or abate such contamination.

53.   The presence of the Chemicals of Concern in the soil, saturated subsurface zone, and in the groundwater at the Site presents or may present an imminent and substantial endangerment to human health or the environment.

54.   Defendants' liability for such relief as the Court may determine appropriate and necessary under RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), is strict, joint and several.

55.   Plaintiffs are entitled to injunctive relief under RCRA § 7002(a), 42 U.S.C. § 6972(a), restraining and enjoining Defendants and requiring each of them, jointly and severally, to conduct a complete, timely and appropriate investigation and abatement of all actual and potential endangerments arising from the presence of the Chemicals of Concern in the environment at the Site.

## SECOND CAUSE OF ACTION
### (Cost Recovery – CERCLA § 107(a))
### (Against All Defendants)

56.   Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 55, inclusive, as though set forth in full herein.

57.   Charlotte Heinl used, processed, produced, stored, treated, and/or generated hazardous substances in the course of her dry-cleaning operations at the Property.

58.   Charlotte Heinl caused or contributed to the spilling, leaking, disposal, and release of hazardous substances during her dry-cleaning operations at the Property thereby creating a condition of hazardous substance contamination at the Site.

59.   Charlotte Heinl transported or arranged for transport of hazardous substances, which she owned or possessed, to the Property, and stored, treated, and disposed of hazardous substances at the Property, and owned and operated the facility on the Property during the time that hazardous substances were disposed of at the Property.

60.   Bank of America owned the Property at the time that hazardous substances were disposed of at the Property and at the time that a condition of hazardous substance contamination at the Site was created.  The Bank is also the current owner of adjoining land that, on information and belief, is also contaminated and thus is part of the Site.

61.   As a result of the condition of hazardous substance contamination at the Site, Plaintiffs have undertaken various response actions and have incurred various response costs in responding to the



hazardous substance contamination at the Site.

62.   The Site is a "facility" as that term is defined in CERCLA § 101(9), 42 U.S.C. § 9601(9).

63.   The Property is a "facility" as that term is defined in CERCLA § 101(9), 42 U.S.C. § 9601(9).

64.   A "release" or "threatened release" of a "hazardous substance," as those terms are defined in CERCLA §§ 101(22), (14), 42 U.S.C. §§ 9601(22), (14), has occurred at the Site.

65.   Plaintiffs did not cause or contribute to the environmental contamination at the Site and deny that they are liable for any of the costs incurred or to be incurred as the result of the releases of hazardous substances at the Site.  However, acting in good faith and in the interest of an expeditious cleanup, Plaintiffs have incurred and continue to incur response costs to investigate, remove, and remediate the environmental contamination at the Site, which costs are consistent with the National Contingency Plan ("NCP").

66.   Defendants are strictly liable to Plaintiffs for the costs referred to above and for interest on those costs pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a).

67.   Defendants' liability is joint and several under CERCLA § 107(a), 42 U.S.C. § 9607(a).

**THIRD CAUSE OF ACTION**
**(Abatement of a Public Nuisance)**
**(Against All Defendants)**

68.   Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 67, inclusive, as though set forth in full herein.

69.   California Civil Code § 3479 defines a "nuisance," in relevant part, as "[a]nything which is injurious to health, . . . or is indecent or offensive to the senses, or an obstruction to the free use of the property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal or basin."

70.   California Civil Code § 3480 defines a "public nuisance" as:  "[o]ne which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."

71.   Defendants caused or contributed to the past or present handling, storage, treatment, transportation, or disposal of "solid wastes," "hazardous wastes," "wastes," and "hazardous substances"

in the environment at the Site, including the waters of the State of California, because each Defendant released or otherwise discarded Chemicals of Concern during their operations on the Property or controlled the Property from which the Chemicals of Concern were released or otherwise discarded, but failed to prevent or abate this contamination.

72.  Defendants' acts and omissions in causing and contributing to releases of "solid wastes," "hazardous wastes," "wastes," and "hazardous substances" at the Site created a condition that is injurious to health, is indecent or offensive to the senses, and is an obstruction to the free use of a "stream" and/or a "basin."

73.  The public nuisance condition and related endangerments to health and the environment arising from released hazardous substances at the Site affects the entire surrounding community because it interferes with the free use and enjoyment of publicly-owned property and natural resources, including surface water and groundwater within and downgradient of the Site.

74.  Defendants have caused, created, maintained, contributed to, and neglected to abate a "public nuisance," as defined in California Civil Code §§ 3479 and 3480, namely the actual and potential endangerments to health and the environment created by the "solid waste," "hazardous waste," "waste," or "hazardous substance" contamination at the Site.

75.  Plaintiffs have suffered special injury and damages as a direct and proximate result of the contamination at and emanating from the Site as the public nuisance has damaged Plaintiffs' Property including the surface water on it and the groundwater beneath and around it.

76.  Plaintiffs have demanded that Defendants abate the nuisance complained of and hereby reiterate that demand.

77.  Defendants are strictly, jointly and severally liable for abatement of the public nuisance.

78.  Plaintiffs are entitled to injunctive relief restraining and enjoining Defendants and requiring each of them, jointly and severally, promptly and competently to take such action as may be necessary to abate the public nuisance at issue and to reimburse Plaintiffs for all response costs they have incurred and will incur at the Site.

/ / /

**FOURTH CAUSE OF ACTION**
**(Abatement of a Public Nuisance *Per Se*)**
**(Against All Defendants)**

79.   Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 78, inclusive, as though set forth in full herein.

80.   The release or disposal of the Chemicals of Concern as alleged herein constitutes a public nuisance because it violates California Water Code §§ 13050(m), 13350, and 13387, California Health and Safety Code §§ 5411, 5411.5, and 117555, California Fish and Game Code § 5650, and Civil Code §§ 3479-3480, the purpose of which are to set a standard of care or conduct to protect the public and the environment from the type of improper activities engaged in by Defendants.   Therefore, such improper activities and violations constitute a public nuisance *per se*.

81.   Defendants have failed to comply with federal, state, local, and common law.  Plaintiffs have sustained special injury as a result of this public nuisance, including damage to their Property.  As a further direct and proximate result of the public nuisance *per se* created by Defendants, Plaintiffs have suffered damages as previously described herein, including other consequential, incidental and general damages to be proven at trial.  Plaintiffs seek the abatement of the nuisance and the recovery of all legally available costs and damages.

82.   Plaintiffs request that the public nuisance, as described herein, be enjoined and abated.

**FIFTH CAUSE OF ACTION**
**(Abatement of a Private Nuisance)**
**(Against All Defendants)**

83.   Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 82, inclusive, as though set forth in full herein.

84.   Defendants caused or contributed to the past or present handling, storage, treatment, transportation, or disposal of "solid wastes," "hazardous wastes," "wastes," and "hazardous substances" in the environment at the Site, including the waters of the State of California, because each Defendant released or otherwise discarded Chemicals of Concern during their operations at the Property or controlled the Property from which such Chemicals of Concern were released or otherwise discarded, but failed to prevent or abate this contamination.

85.   Defendants' acts or omissions contributed to or caused the release of "solid wastes,"

"hazardous wastes," "wastes," and "hazardous substances" at the Site and have interfered with Plaintiffs' free use and enjoyment of their property.

86.   Plaintiffs have demanded that Defendants abate the nuisance complained of and hereby reiterate that demand.

87.   Defendants are strictly, jointly and severally liable for the investigation and abatement of the nuisance.

88.   As a direct and proximate result of the acts, omissions, and conduct of Defendants, Plaintiffs have suffered and continue to suffer damages as alleged herein.  The above-described acts, omissions, and conduct of Defendants are and have been without the consent and knowledge of, and against the will of, and in violation of the rights of, Plaintiffs.

89.   Plaintiffs are entitled to injunctive relief restraining Defendants and requiring each of them, jointly and severally, promptly and competently to take such action as may be necessary to abate the private nuisance at issue herein and to reimburse Plaintiffs for all response costs they have incurred and will incur at the Site.

### SIXTH CAUSE OF ACTION
**(Trespass)**
**(Against All Defendants)**

90.   Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 89, inclusive, as though set forth in full herein.

91.   Plaintiffs are informed and believe and thereon allege that Defendants, without the consent or knowledge of Plaintiffs, released "hazardous substances" and knew or should have known that such release(s) would contaminate the soil, surface water, and groundwater at, beneath, and around the Property; and that unless the release was immediately contained and cleaned up, it would spread and travel through the soil, surface water, and groundwater to adjacent properties.

92.   Plaintiffs are informed and believe and thereon allege that Defendants have failed to clean up the "hazardous substance" contamination and, as a result, the "hazardous substances" have been detected at, around, and beneath Plaintiffs' Property.

93.   Unless Defendants are ordered immediately to clean up the contamination of the soil, surface water, and groundwater, it will be necessary for Plaintiffs to commence many successive actions against

Defendants to secure compensation for the damages sustained, thus requiring a multiplicity of suits.

94.   As a direct and proximate result of the acts, omissions, and conduct of Defendants and of the continuing trespass caused thereby, Plaintiffs have has suffered and continue to suffer damages as alleged herein.

95.   Plaintiffs have no adequate remedy at law for the injuries suffered by reason of the acts, omissions, and conduct of Defendants and by reason of the trespass committed by them, and this Court should grant injunctive relief to compel Defendants immediately to clean up the contamination of the soil, surface water, and groundwater at, beneath, and around the Site.

**SEVENTH CAUSE OF ACTION**
**(Negligence)**
**(Against All Defendants)**

96.   Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 95, inclusive, as though set forth in full herein.

97.   By virtue of the facts and circumstances of the contamination at the Site as alleged above, the doctrine of *res ipsa loquitur* is applicable to this negligence claim against each of Defendant.  Under that doctrine, the burden of proving that Charlotte Heinl's operations at the Property were free from all negligence in connection with the releases of the Chemicals of Concern at the Property is placed on Defendants and the burden of proving non-liability in connection with the contamination is placed on Defendants.  In the event any or all of Defendants fail to sustain their respective burdens, they are legally responsible for the damages asserted herein.  Under the circumstances, the contamination of the soil, surface water, and groundwater at the Property would not be present but for negligence on the part of Defendants, their agents, servants, and employees, in the manner in which they conducted their respective operations, conduct and activities.

98.   In the alternative to the allegation that the doctrine of *res ipsa loquitur* is applicable against Defendants, it is alleged that the contamination and resulting property damage and response costs were due to the negligence of Defendants, and each of them, in their operations, conduct and activities at the Site and that each Defendant's negligence proximately caused the contamination.

99.   Defendants, while owning, controlling, occupying, and/or conducting operations at the Property, owed a duty to Plaintiffs, as the future purchasers of the Property, to use, store, maintain,

monitor, and remove the Chemicals of Concern in a safe and careful manner.  Defendants also owed a duty to Plaintiffs, as the future purchasers of the Property, to avoid storing, disposing of, releasing, or allowing to be released any contaminants in a manner that would cause injury to Plaintiffs, Plaintiffs' Property, the public, or the environment.

100. Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, breached their duties by negligently, carelessly, recklessly, and illegally using, storing, maintaining, monitoring, and removing the Chemicals of Concern in such a way that the Chemicals of Concern were released into the environment at the Property.

101. Plaintiffs are informed and believe and thereon allege that Defendants failed promptly and diligently to contain and clean up the contamination caused by their releases of the Chemicals of Concern.

102. Plaintiffs are informed and believe and thereon allege that the releases of the Chemicals of Concern would not have occurred absent some form of negligence by either or both of the Defendants; that the releases of the Chemicals of Concern were caused by something within the exclusive control of one or both of the Defendants; and that such releases were not due to any voluntary action or contribution on the part of Plaintiffs.

103. As a direct and proximate result of the acts, omissions, and conduct of Defendants, Plaintiffs have suffered and continue to suffer damages as alleged herein.  The above-described acts, omissions, and conduct of Defendants, including the negligence committed by Defendants, were without the consent or knowledge of, and were against the will of, and in violation of the rights of, Plaintiffs.

**EIGHTH CAUSE OF ACTION**
**(Negligence *Per Se*)**
**(Against All Defendants)**

104. Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 103, inclusive, as though set forth in full herein.

105. The release or disposal of the Chemicals of Concern as alleged herein were in violation of California Water Code §§ 13050(m), 13350, and 13387, California Health and Safety Code §§ 5411, 5411.5, and 117555, California Fish and Game Code § 5650, and California Civil Code §§ 3479-3480, the purpose of which are to set a standard of care or conduct to protect the public and the environment

from the type of improper activities engaged in by Defendants.  Therefore, such improper activities and violations also constitute negligence *per se.*

106. The injury and damages that Plaintiffs complain of herein resulted from the kind of occurrence the statutory provisions set forth above were designed to prevent.

107. Plaintiffs are part of the class of persons the statutory provisions were intended to protect, as Plaintiffs are Property owners that have been adversely impacted by Defendants' violations of said statutory provisions.

108. Defendants have failed to comply with federal, state, local, and common law.  As a direct and proximate result of Defendants' failure to comply with applicable statutory provisions, Plaintiffs have incurred and will continue to incur, and are entitled to recover, expenses, losses, injury and damages, including consequential, incidental and general damages to be proven at trial.

### NINTH CAUSE OF ACTION
**(Ultrahazardous Activity)**
**(Against All Defendants)**

109. Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 108, inclusive, as though set forth in full herein.

110. Defendants engaged in the ultrahazardous activity of using and releasing, or leasing the Property to another who used and released, hazardous substances into the soil, surface water, and groundwater at the Property, notwithstanding the fact that those substances pose a serious and substantial risk of harm to human health, including cancer and death.  Using and releasing hazardous substances is unsafe and harmful even if the utmost care is used.

111. Defendants recognized, or should have recognized, that the Property and the Site were likely to be harmed by Defendants' use and release of hazardous substances into the soil, surface water, and groundwater at the Property.

112. As a direct and proximate result of this ultrahazardous activity, Plaintiffs have incurred and will continue to incur, and are entitled to recover, expenses, losses, injury and damages as set forth herein.

/ / /

1

## TENTH CAUSE OF ACTION
### (Fraudulent Nondisclosure / Concealment)
### (Against Defendant Bank of America)

2

3    113. Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs

4    1 through 112, inclusive, as though set forth in full herein.

5    114. Bank of America knew or should have known that the Property was contaminated before it

6    sold the Property to Plaintiffs in 1986-1987.

7    115. Bank of America had a duty pursuant to the common law, California Health & Safety Code

8    § 25359.7(a), CERCLA § 101(35), 42 U.S.C. § 9601(35), and other federal and state laws, to Plaintiffs

9    to disclose the fact that the Property was contaminated before it sold the Property to Plaintiffs.

10    116. Before Bank of America sold the Property to Plaintiffs in 1986-1987, it did not disclose, and

11    thereby breached its duty to disclose, to Plaintiffs the fact that the Property was contaminated.

12    117. When Bank of America sold the Property to Plaintiffs in 1986-1987, it intended to defraud

13    Plaintiffs by intentionally not disclosing, concealing or suppressing the fact that the Property was

14    contaminated.

15    118. At the time they purchased the Property from Bank of America, Plaintiffs were unaware of

16    the fact that the Property was contaminated and, despite their diligent attention and observation, did not

17    discover that the Property was contaminated.

18    119. If Plaintiffs had known about the contamination of the Property before they purchased the

19    Property, they would not have purchased the Property.

20    120. As a direct and proximate result of Bank of America's failure to disclose, concealment, or

21    suppression of the fact that the Property was contaminated, Plaintiffs have incurred and will continue

22    to incur, and are entitled to recover, expenses, losses, injury and damages as set forth herein.

23

## ELEVENTH CAUSE OF ACTION
### (Contribution)
### (Against All Defendants)

24

25    121. Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs

26    1 through 120, inclusive, as though set forth in full herein.

27    122. California Civil Code § 1432 provides in pertinent part: "a party to a joint, or joint and several

28    obligation, who satisfies more than his share of the claim against all, may require a proportionate

contribution from all the parties joined with him." As a direct and proximate result of Defendants' releases of hazardous substances into the environment, as alleged above, Plaintiffs have incurred and will continue to incur responses costs for the investigation and cleanup of the contamination at the Site.

123. Plaintiffs have incurred and will continue to incur more than its fair share of the response costs for the investigation and clean up of the contamination at the Site.

124. As a direct and proximate result of the acts, omissions, and conduct of Defendants, as herein alleged, Plaintiffs are entitled to contribution from Defendants for all response costs Plaintiffs has incurred and will incur in connection with responding to the contamination at the Site.

### TWELFTH CAUSE OF ACTION
**(Contribution – California's Hazardous Substance Account Act)**
**(Against All Defendants)**

125. Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 124, inclusive, as though set forth in full herein.

126. The Carpenter-Presley-Tanner Hazardous Substance Account Act ("HSAA"), Cal. Health & Safety Code § 25300 *et seq.*, was enacted to encourage the expedient cleanup of "hazardous substances" in the environment. In furthering this goal, the California Legislature included the statutory right of contribution for those parties who clean up contaminated properties from those parties who are responsible for the contamination.

127. California Health & Safety Code § 25363(e) provides that "[a]ny person who has incurred removal or remedial action costs in accordance with [HSAA] . . . may seek contribution or indemnity from any person who is liable pursuant to [HSAA]."

128. A "liable person" is defined in California Health & Safety Code § 25323.5(a) as "those persons described in section 107(a) of [CERCLA] (42 U.S.C. Sec. 9607(a))."

129. "Those persons described in section 107(a)" of CERCLA include the owner and operator of a facility, any person who at the time of disposal of any hazardous substance owned or operated any facility at which hazardous substances were disposed, and any person who arranged for disposal or treatment of hazardous substances for transport to a disposal facility. 42 U.S.C. § 9607(a).

130. Each Plaintiff is a "person" within the meaning of California Health & Safety Code §§ 25319 and 25323(a).



131. There have been releases or threatened releases of hazardous substances at the Property.

132. As a direct and proximate result of Defendants' actions and omissions that caused and contributed to the hazardous substance contamination at the Site, Plaintiffs have incurred response costs in accordance with the HSAA.

133. Plaintiffs have given the California Department of Toxic Substances Control ("DTSC") notice of the commencement of this action, as required by California Health & Safety Code § 25363(e).

134. As a direct and proximate result of the actions and omissions of Defendants, as alleged herein, and due to the strict liability imposed by the HSAA, Plaintiffs are entitled to contribution from Defendants under California Health & Safety Code § 25363 for all response costs they have incurred that are attributable to Defendants.

**THIRTEENTH CAUSE OF ACTION**
**(Contribution – CERCLA § 113(f))**
**(Against All Defendants)**

135. Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 134, inclusive, as though set forth in full herein.

136. Plaintiffs did not cause or contribute to the environmental contamination at the Site and deny that they are liable for any of the costs incurred or to be incurred as the result of the releases and threatened releases of hazardous substances at the Property.  However, acting in good faith and in the interest of an expeditious clean up, Plaintiffs have incurred and continue to incur response costs to investigate, remove, and remediate the environmental contamination at the Site, which costs are consistent with the NCP.

137. Defendants are liable to Plaintiffs for contribution under CERCLA § 113(f), 42 U.S.C. § 9613(f), for some or all amounts that Plaintiffs have incurred and may in the future incur, as the result of the releases or threatened releases of hazardous substances at the Site, in that Defendants are liable for response costs under CERCLA § 107(a), 42 U.S.C. § 9607(a).

**FOURTEENTH CAUSE OF ACTION**
**(Equitable Indemnity)**
**(Against All Defendants)**

138. Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 137, inclusive, as though set forth in full herein.



139. The liability, if any, that Plaintiffs may have to any person or entity, including, without limitation, any government or regulatory agency, under any law, regulation, or common law principle, relating to the contamination at the Site, is the result, in whole or in part, of the acts or omissions of Defendants.

140. As between Plaintiffs and Defendants, Defendants are solely responsible for all costs and expenses to investigate and clean up the contaminated soil and groundwater at the Site.

141. As between Plaintiffs and Defendants, Defendants are solely responsible for all costs and expenses incurred and to be incurred because of legal or administrative actions that have been brought, or may be brought in the future, by any public or private persons or entities concerning or related to the contaminated soil and groundwater at the Site.

142. In the event that either or both Plaintiffs are adjudged liable for any or all relief requested in any judicial or administrative action, arising out of or related to the presence of the contamination at the Site, brought against Plaintiffs by any persons or entities, public or private, such liability is purely secondary, imputed, or technical. Primary and actual liability attaches to Defendants and is a direct and proximate result of the acts, omissions, and conduct of Defendants.

143. As a direct and proximate result of the acts, omissions, and conduct of Defendants, as herein alleged, Defendants are bound and obligated to indemnify Plaintiffs for, and hold Plaintiffs harmless from and against, all response costs, arising out of, or relating in any way to the contamination at the Site, and any other costs heretofore or hereafter incurred by Plaintiffs in responding to the releases or threatened releases of the Chemicals of Concern at the Site.

**FIFTEENTH CAUSE OF ACTION**
**(Waste)**
**(Against All Defendants)**

144. Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 143, inclusive, as though set forth in full herein.

145. During the period of each Defendant's occupancy of the Property, Defendants committed waste by contaminating the Site with the Chemicals of Concern or allowing the Site to become and remain contaminated with the Chemicals of Concern.

146. The release or disposal of the Chemicals of Concern as alleged herein constitutes waste.



147. As a direct and proximate result of Defendants' waste, Plaintiffs have been damaged and will continue to suffer damages, including response costs, attorneys' fees, expert witness fees, reduced value, and impediments to financing.

**SIXTEENTH CAUSE OF ACTION**
**(Declaratory Relief)**
**(Against All Defendants)**

148. Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 147, inclusive, as though set forth in full herein.

149. An actual dispute and controversy has arisen and now exists among the parties to this action concerning their respective rights and duties in that Plaintiffs contend, and Defendants deny, that Defendants are responsible and liable for the contamination at the Site and are obligated to contribute to the costs of the investigation and clean up of that contamination.

150. Because the extent and magnitude of the contamination at the Site are not fully known at this time, and the investigatory and remedial work is still ongoing, Plaintiffs will incur necessary response costs, including but not limited to investigatory, remedial and removal expenses, attorneys' fees and interest in the future.

151. Plaintiffs desire a judicial determination of their rights and duties and a declaration that Defendants are liable to Plaintiffs for all responses costs incurred and to be incurred by Plaintiffs at the Site as a result of releases of hazardous substances by Defendants.

152. Pursuant to HSAA § 25363, Plaintiffs are entitled to a declaratory judgment establishing the liability of Defendants for such response costs for the purpose of this and any subsequent action or actions to recover further response costs.

153. A judicial declaration is necessary and appropriate under the present circumstances in order that Plaintiffs may ascertain their rights and duties.

/ / /

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request that judgment be entered in their favor for the following:

1.     For a preliminary and permanent injunction requiring Defendants to undertake at their sole cost and consistent with the National Oil and Hazardous Substances Pollution Contingency Plan ("NCP") at 40 C.F.R. Part 300, all actions necessary to investigate and abate the endangerments to health or the environment that may be presented by Defendants' use and disposal of "solid wastes" and "hazardous wastes" as alleged above;

2.     For an order requiring Defendants to undertake at their sole cost all actions necessary to investigate and remediate the contamination at the Site;

3.     For a judicial determination that Defendants are jointly and severally liable for the abatement of the imminent and substantial endangerment to human health or the environment that may be presented by Defendants' use and disposal of "solid wastes" and "hazardous wastes" as alleged above;

4.     For a declaration that Defendants are obligated to pay to Plaintiffs all future response costs and any other costs incurred by Plaintiffs hereafter in response, removal, or remedial efforts incurred pursuant to law or the order of any governmental agency with jurisdiction over the Site;

5.     For damages to compensate Plaintiffs for the costs they have incurred and will incur in response, removal, or remedial efforts, which damages are currently in excess of $100,000, the exact amount of which will be ascertained according to proof;

6.     For damages to compensate Plaintiffs for the costs and loss of earnings they have incurred and will incur in lost income and in carrying costs because of their diminished ability to freely use, develop, encumber and/or sell their Property, which damages are currently in excess of $1.2 million, the exact amount of which will be ascertained according to proof;

7.     For treble damages pursuant to California Code of Civil Procedure § 732.

8.     For damages according to proof;

9.     For an award to Plaintiffs for their costs of litigation, including attorneys' fees and expert witness fees pursuant to 42 U.S.C. § 6972(e), California Code of Civil Procedure §§ 1021.5 and 1021.6, and written contract;

10.     For all costs of suit herein;

11.  For such other and further relief as this Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiffs hereby demand trial by jury of any and all issues so triable.

DATED: December 11, 2009                    PALADIN LAW GROUP® LLP


/s/ Brian R. Paget
_____
Brian R. Paget
Counsel for Plaintiffs
Richard G. Whitehurst
and Lorraine D. Whitehurst