United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD WHITEHURST, et al.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>CHARLOTTE HEINL, et al.,<br><br>　　　　Defendants. | Case No. 09-cv-04808-MEJ<br><br>**ORDER RE: MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT**<br><br>Re: Dkt. No. 54 |

## INTRODUCTION

Pending before the Court is the Motion for Determination of Good Faith Settlement between Defendant, Counterclaimant, and Crossclaimant Bank of America, N.A. (the "Bank"); Plaintiffs and Counterdefendants Richard G. Whitehurst and Lorraine D. Whitehurst, as individuals and as trustees of the Whitehurst Family Trust (collectively "Whitehurst") ; and Charlotte A. Heinl, deceased, an individual and dba Norge Cleaners by and through her insurance company the Chicago Insurance Company ("Heinl"). Dkt. No. 54. The parties are referred to herein as the "Settling Parties." The Settling Parties request a judicial determination that the settlement entered into between them was made in good faith in accordance with California Code of Civil Procedure sections 877 and 877.6(a); Section 4 of the Uniform Contribution Among Tortfeasors Act ("UCTA")[1]; the Comprehensive Environmental Response, Compensation and

---

[1] The UCTA was repealed by Initiative Proposal No. 87-2, § 2, effective March 5, 1989, but governs this case because the claims in this case relate to events that occurred prior to its repeal. *See Berg v. Popham*, 2001 WL 36138670, at *2 (D. Alaska June 27, 2001), *aff'd*, 412 F.3d 1122 (9th Cir. 2005).

1  Liability Act of 1980 ("CERCLA"), as amended by the Superfund Amendments and
2  Reauthorization Act of 1986, 42 U.S.C. § 9601-75; the Resource Conservation and Recovery Act
3  ("RCRA"), 42 U.S.C. § 6901 et seq.; and state and federal common law.  No opposition has been
4  received.  The Court finds this matter suitable for disposition without oral argument and
5  VACATES the April 23, 2015 hearing.  *See* Fed. R. Civ. P. 78(b); Civil L.R. 7-1(b).  Having
6  considered the parties' positions, relevant legal authority, and the record in this case, the Court
7  **GRANTS** the Settling Parties' Motion for the reasons set forth below.

## BACKGROUND

The claims in this action arise out of the contamination of a parcel of property at 2114 MacArthur Boulevard, Oakland, California (the "Property"), which was once used as a dry cleaning business.[2]  Mot. at 2.  Environmental investigations indicate the presence of hazardous substances[3] consisting of chemicals commonly associated with dry cleaning operations (specifically, perchloroethylene, also known as "PCE" or "perc," and its degradation products) in the soil and groundwater at and emanating from the Property.  *Id.*

Whitehurst currently owns the Property and improvements in fee simple.  *Id.*  Heinl owned and operated a dry cleaning business at the Property from approximately 1966 to 1987.  *Id.*  Bank of America, N.T. & S.A. owned the Property from approximately 1969 to 1987.  *Id.*  The Bank is a successor in interest of Bank of America, N.T. & S.A.  *Id.*  Whitehurst purchased the Property from Bank of America, N.T. & S.A. in 1987.  *Id.*

Whitehurst filed a complaint on October 8, 2009, in order to adjudicate the liability associated with responding to the presence of the hazardous substances at the Property.  Dkt. No. 1.  Whitehurst subsequently filed a First Amended Complaint on December 11, 2009, in which Whitehurst alleges that the Bank and Heinl were responsible for environmental contamination at

---

[2] The Property was previously known as 2114-2116 MacArthur Boulevard, Oakland, California.  Mot. at 2.
[3] The term "hazardous substance" includes any hazardous waste or hazardous substance as defined in any federal, state, or local statute, ordinance, rule, or regulation including, but not limited to, CERCLA, 42 U.S.C. §§ 9601(14) and (33), RCRA, 42 U.S.C. § 6903(27), and the California Hazardous Substance Account Act, Cal. Health & Safety Code § 25300 et seq., and regulations promulgated thereunder, including 22 Cal. Code of Regs. § 66600 et seq.

the Property, as well as numerous other damages associated with the attempted leasing and sale of the Property. Dkt. No. 5. The Bank filed a counterclaim against Whitehurst on January 4, 2010, alleging that Whitehurst is responsible for costs associated with the investigation and remediation of hazardous substances on or emanating from the Property. Dkt. No. 13. The Bank also filed a crossclaim against Heinl on March 3, 2010, alleging that Heinl was liable for the environmental contamination of the Property as the active tenant and/or operator of the dry cleaning business at the Property, and is therefore liable for any costs and damages alleged by Whitehurst. Dkt. No. 25.

The Settling Parties engaged in multiple mediation activities, including a full day of mediation on July 12, 2012. Maiden Decl. ¶ 2, Dkt. No. 56. That mediation did not result in a settlement, but the Bank, Whitehurst, and Heinl continued to negotiate both privately and through the mediator. *Id.* On October 30, 2013, the Settling Parties engaged in another mediation session. Again, the session did not result in a settlement, but the parties continued to negotiate privately and with the mediator, and they subsequently executed the Settlement Agreement which is the subject of this motion. *Id.* Whitehurst, Heinl, and the Bank each deny any responsibility for the environmental contamination at the Property, but each party desires and intends to effect a final settlement of all claims and disputes between them. Mot. at 3.

The Settling Parties recorded the terms of their Settlement Agreement in a formal Settlement Agreement and Release with an effective date of March 23, 2015 (the "Settlement Agreement"). Maiden Decl., Ex. 1. The terms of the Settlement Agreement are summarized as follows:

1. The Settling Parties agree to remediate the environmental contamination[4] to the satisfaction of the California Regional Water Quality Control Board, San Francisco Bay Region,

---

[4] As used by the Settling Parties, the term "environmental contamination" includes hazardous substances commonly associated with dry cleaning operations (specifically, perchloroethylene, aka "PCE" or "perc," and its degradation products) in, at, or emanating from the Property which is required by a regulatory agency to be investigated, remediated, addressed, responded to, mitigated, or which is otherwise causing and/or threatening to cause damage to human health and/or any surface water, ground water, water, drinking water supply, soil, air, land surface, or subsurface strata. Mot. at 4 n.4.

and any other regulatory agency with jurisdiction over the environmental contamination at the Property, as evidenced by the issuance of a No Further Action letter from the agency. *Id*. § 2.

2. In order to accomplish the remediation of the site, the Settling Parties agree to a remediation project, which is to be performed by a qualified consultant. The purpose of the remediation project is to obtain a No Further Action determination from the regulatory agency with primary jurisdiction over the remediation project, as set forth in further detail in the Fixed Price Remediation Agreement attached to the Settlement Agreement as Exhibit 1. *Id.*

3. The Bank shall designate a project manager who will, inter alia, supervise and direct the implementation of the remediation project and undertake commercially reasonable efforts to ensure expeditious completion of the remediation project and receipt of a final No Further Action letter. *Id.* § 4(A)(i).

4. The Settling Parties shall each pay into a remediation escrow account the sums set forth in section 3(A) of the Settlement Agreement. The funds in the account shall be paid to (i) the consultant for the remediation project pursuant to the terms and conditions set forth in sections 4(C) and 4(D) of the Settlement Agreement and (ii) the applicable Regulatory Agency for oversight fees and costs arising from the investigation, remediation, monitoring, and mitigation measures relating to the Remediation Project as set forth in section 4(E) of the Settlement Agreement. *Id.* § 3(A).

5. Each of the Settling Parties agrees to release each of the other Settling Parties from any and all claims related to the environmental contamination described in the Settlement Agreement consistent with and as set forth in the Settlement Agreement. *Id.* § 6.

6. The Settlement Agreement is contingent upon the entry of an order by the Court determining that the settlement is "in good faith" within the meaning of Sections 877 and 877.6, the CERCLA, UCTA, RCRA, and state and federal common law, and barring all contribution or indemnity claims against each Settling Party for costs or damages arising from the environmental contamination described in the Settlement Agreement to the extent allowed by law and as provided by the terms and conditions of the Settlement Agreement. *Id.* § 5.

7. The Settlement Agreement is also contingent upon the Court retaining jurisdiction

4

over this matter to resolve any and all disputes that may arise under the agreement between the Settling Parties. *Id.*

## LEGAL STANDARD

A motion for good faith settlement is governed by California Code of Civil Procedure sections 877 and 877.6, both which apply to federal court proceedings and authorize the Court to determine whether a settlement agreement was entered into in good faith. *Shawmut Bank N.A. v. Kress Assoc.*, 33 F.3d 1477, 1504 (9th Cir. 1994); *Slottow v. Am. Cas. Co. of Reading, Penn.*, 10 F.3d 1355, 1358 (9th Cir. 1993) (en banc). The California Supreme Court has held that "[t]he good faith provision of section 877 mandates that the courts review agreements purportedly made under its aegis to insure that such settlements appropriately balance the contribution statute's dual objectives." *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488, 494 (1985). The legislative objectives in promulgating section 877 were "equitable sharing of costs among the parties at fault, and . . . encouragement of settlements." *River Garden Farms, Inc. v. Superior Court*, 26 Cal. App. 3d 986, 993 (1972).

In *Tech-Bilt*, the Court articulated a standard for determining good faith, requiring that "a defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of settlement, would estimate the settling defendant's liability to be." 38 Cal. 3d at 499. Under *Tech-Bilt*, when making a good faith determination, a court should consider: (1) a rough approximation of the plaintiff's total recovery and the settlor's proportionate liability; (2) the amount paid in settlement; (3) the allocation of settlement proceeds among plaintiffs; and (4) a recognition that less is paid in settlement than should be awarded at trial. *Id.* The court may consider additional relevant factors such "the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants." *Id.* at 499-500. A court evaluates the *Tech-Bilt* factors on the basis of information available at the time of settlement. *Id.* at 499.

A party opposing the motion for good faith settlement bears the burden of establishing a lack of good faith. *Id.* at 493; *see also* Cal. Civ. Proc. Code § 877.6(d). To successfully oppose a motion for good faith settlement, the opposing party "must demonstrate . . . that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable

5

1  objectives of the statute." *Tech-Bilt*, 38 Cal. 3d at 499-500. The determination as to whether a
2  settlement is made in good faith is a matter within the court's discretion. *Id.* at 502.

### DISCUSSION

Having considered the parties' submissions and supporting declarations, the *Tech-Bilt* factors, and the lack of opposition, the Court finds that the settlement between all parties was reached in good faith under California Code of Civil Procedure section 877.6. The settlement was the result of arm's length negotiations under the oversight of a neutral mediator, and furthers the goals under CERCLA. *See United States v. Montrose Chem. Corp.*, 50 F.3d 741, 748 (9th Cir. 1995) (noting "CERCLA's primary goal of encouraging early settlement"). Additionally, all parties join in the settlement and agreed to the accompanying settlement amounts. This case was filed in 2009, the motion was filed on March 27, 2015, and the parties have now had ample opportunity to consider the claims, perform a complete analysis of the Settlement Agreement, and express any objections or opposition. To date, no party has filed objections. Indeed, the Motion is unopposed, and no party has demonstrated that the Settlement Agreement is unreasonable or inconsistent with the equitable objectives of section 877.6. Accordingly, as further detailed below, the Court finds that the parties' joint settlement is in good faith.

As to the *Tech-Bilt* factors, the Court first notes that liability as to each of the Settling Parties is disputed. Maiden Decl., Ex. 1 § 11(A). One of the most important *Tech-Bilt* factors is the proportion of liability, and where "there is no substantial evidence to support a critical assumption as to the nature and extent of a settling defendant's liability, then determination of good faith upon such assumption is an abuse of discretion." *Toyota Motor Sales U.S.A., Inc. v. Superior Court*, 220 Cal. App. 3d 864, 871 (1990). A "settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the . . . liability to be." *Torres v. Union Pac. R.R. Co.*, 157 Cal. App. 3d 499, 508 (1984).

The Settling Parties dispute the events, facts, and dates when releases of hazardous substances at the site actually or allegedly caused or contributed to the alleged environmental contamination at the site. Mot. at 7. However, it is undisputed that an environmental investigation at the site has confirmed the presence of hazardous substances at the site but was not

able to make a definite determination as to each of the Party's respective fault, or lack thereof, for the environmental contamination. *Id.* Thus, the Settling Parties have applied settled allocation principles under CERCLA for determining a reasonable apportionment of the clean-up costs based on relative fault as tenant/business owner (Heinl), landlord/former landowner (Bank), and current landowner (Whitehurst). *Id.* Moreover, the Settling Parties have agreed that while Heinl, as the dry cleaner operator for almost 30 years on the site, has the highest proportionate fault, she also does not have the ability to pay her full share. *Id.* Thus, the Bank and Whitehurst have absorbed Heinl's orphan shares in proportion to the Bank's and Whitehurst's relative fault. *Id.* As a result, the Settling Parties are paying the following amounts into a Remediation Escrow Account for clean-up costs and regulatory oversight costs: Whitehurst - $400,000; Heinl - $600,000; and the Bank - $1,200,000. Maiden Decl., Ex. 1 § 3.

The Bank and Whitehurst believe the allocation for their respective proportionate liability exceeds any potential liability that they would ultimately have for claims associated with the environmental contamination at the site. Mot. at 7. They contend that their contribution to environmental contamination at the site is minimal as passive landowners. *Id.* Because the Bank and Whitehurst dispute that they contributed in any significant way or amount to the environmental contamination, the amount they will pay under the Settlement Agreement exceeds their respective potential and proportionate liability. *Id.* Thus, the first three factors identified in *Tech-Bilt* ("a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability," "the amount paid in settlement," and "allocation of settlement proceeds") support a good faith finding. The Court finds that the settlement amount and the related material terms of the Settlement Agreement are fair and within the reasonable range of the parties' proportionate share of comparative liability.

The fourth *Tech-Bilt* factor recognizes "that a settlor should pay less in settlement than he would if he were found liable after a trial." 38 Cal. 3d at 499. Whitehurst contends that the Bank and Heinl may pay more than their collective contributions of $1,800,000. Mot. at 8. In contrast, the Bank relies on its defenses to liability, namely that the Bank was a passive landowner not involved with the dry cleaning operations and that Whitehurst purchased the Property "as is" when

the dry cleaning business and equipment were still on the Property. *Id.* The Bank and Heinl contend that Whitehurst purchased the Property with knowledge of the dry cleaning business. *Id.* In contrast, Whitehurst relies on its defenses to liability, namely that the Bank knew or should have known about the contamination and failed to properly disclose that information to Whitehurst during the purchase of the Property. *Id.* As a consequence, the Settlement Agreement reflects a discount and compromise on what Whitehurst believes it might be able to ultimately obtain if Whitehurst were to prevail at trial and on what the Bank believes it might be able to ultimately obtain if the Bank were to prevail at trial. *Id.* Further, the Settling Parties believe that the amounts paid by each of them are sufficient to complete the remediation at the site and obtain site closure. *Id.* As a result, this factor also favors a finding of good-faith settlement.

Finally, there is no evidence of collusion, fraud, or tortious conduct intended to injure the interests of any non-settling parties. Significantly here, all parties agreed to settle the case through arm's length negotiations among entities represented by counsel, with the assistance of a professional, neutral mediator. Further, as noted, no opposition to the motion has been filed.

In sum, application of the *Tech-Bilt* factors weighs in favor of granting the Motion for a Determination of Good Faith Settlement.

## CONCLUSION

Based on the analysis above, the Court hereby **GRANTS** the Motion for Determination of Good Faith Settlement. The Court **ORDERS** as follows:

1) The Settlement Agreement (Maiden Decl., Ex. 1, Dkt. No. 56-1) is incorporated by reference as part of this Order.

2) The settlement between the Settling Parties was entered into in good faith within the meaning of California Code of Civil Procedure section 877.6.

3) All past, present, and/or future claims and actions for indemnity and/or contribution against the Settling Parties pertaining to this matter shall, consistent with the terms and conditions of the Settlement, be barred to the extent allowed by law.

4) The Settling Parties shall file with this Court a Stipulation of Dismissal With Prejudice (Federal Rule of Civil Procedure 41(a)(1)(ii)) within 10 days of the date of this Order.

The Stipulation shall indicate this Court shall retain jurisdiction over this matter to resolve any and all disputes between the Settling Parties that arise under the Settlement or this Order.

**IT IS SO ORDERED.**

Dated: April 14, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge